STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| In re: Boutin PRD Amendment | } | Docket No. 93-4-06 Vtec |
| (Appeal of Boutin) | } | |
|  | } | |

Decision and Order on Motions for Summary Judgment and Partial Summary Judgment

Appellant-Applicants Steve and Courtney Boutin appealed from a decision of the Development Review Board (DRB) of the Town of Fletcher dated March 8, 2006, denying their application to amend a Planned Residential Development (PRD). Appellant-Applicants are represented by Jon T. Anderson, Esq.; Interested Person John Koval represents himself; and the Town is represented by Vincent A. Paradis, Esq. and Chad V. Bonanni, Esq.

Appellant-Applicants and the Town have each moved for summary judgment on Question 2 of the Statement of Questions: whether the restriction on the development of Lot 6 "until future amendment of the zoning district density may provide for additional development of the tract" has expired by its terms. The following facts are undisputed unless otherwise noted.

In the late 1980s, William and Thomas Hannon applied to the then-Planning Commission to develop a 17.83-acre parcel of land, located easterly of Town Highway 27 (Schoolcraft Road), in the Rural Residential/Agricultural zoning district. Section 780 of the Zoning and Subdivision By-Laws then in effect (the 1981 Bylaws) allowed the modification of the bylaws "to enable clustering and other innovations in design and more efficient uses of land, . . . and to preserve the natural and scenic qualities of the town." Section 780 provided for Planned Residential Developments, including clustering of uses within the

1

PRD, with reserved open space elsewhere in the development to insure that the overall density of units is not greater than the number which could be permitted in a conventional subdivision in the district. §780(c)(3). The minimum lot size was two acres for this district. Single-family dwellings and "residential lodging" were residential permitted uses in the district; two-family dwellings were not mentioned as either permitted or conditional uses. "Lodging establishments" were conditional uses in the district.

The Hannons' proposed a seven-lot Planned Residential Development (PRD), within which five of the proposed lots (Lots 1 through 5) were undersized for the district: they ranged in area from just under an acre to approximately an acre and a half.[1] Lots 1 and 2 had frontage on Town Highway 27; Lots 2, 3, 4 and 5 had access from the southwesterly side of or from the turnaround at the end of the proposed development roadway. One proposed lot (Lot 7 as shown on the 1990 subdivision approval and the 1990 survey) was 5.71 acres in area (including the area of the development roadway). Lot 7 had direct access to Town Highway 27 as well as access from the northeasterly side of the development roadway. The remaining proposed lot (Lot 6 as shown on the 1990 subdivision approval and the 1990 survey) was 6.535 acres in area, adjoining Lots 1, 3, 4 and 5 on their southerly boundaries and without access to either the development roadway or to Town Highway 27. A "proposed subdivision site plan" was drawn by Schreib Engineering Inc. on April 3, 1990, and stamped as approved by the Planning Commission on November 14, 1990, "subject to all conditions and requirements stated in Planning Commission decision[2] dated

---

[1] Lot 1: 0.989 acre; Lot 2: 1.027 acres; Lot 3: 1.151 acres; Lot 4: 1.039 acres; and Lot 5: 1.378 acres.

[2] No Planning Commission decision or minutes from November 1990 have been provided to the Court in connection with these motions. Material facts may be in dispute, or at least have not been provided, as to whether the conditions placed on the property in November of 1990 differed from those imposed in the May 1990 PRD approval. The 1995 decision of the Planning Commission involving this property and the 2006 decision of the DRB involving this property both refer to the PRD approval as having been made in May

2

Nov., 1990" and signed by the chair of the Planning Commission on December 10, 1990. On that approved 1990 site plan, Lots 1, 2, 3, 4, 5, and 7 are shown with proposed house sites and septic systems, while Lot 6 is shown as undeveloped and about two-thirds covered with "small trees and brush" with much of the remainder shown as a "mossy" or "swamp" area. Lots 1, 2, and 7 were proposed to have on-site septic disposal systems, while the disposal fields for the septic systems for Lots 3, 4, and 5 were located in part on Lot 3 and in part on Lot 1. Lot 6 is shown as having had six soil test pits dug outside of the "swamp area" but the parties have not provided information as to whether any areas on Lot 6 tested as suitable for septic disposal.

The Planning Commission approved a sketch plan[3] in late 1989, subject to eight conditions. Reading the conditions of approval in light of the final approved layout of the lots, and in light of Mr. Hannon's May 1, 1990 letter, it appears that on "Sketch Plan B" that was the subject of the 1989 sketch plan approval, the lot labeled as Lot 7 on the 1990 final approval (having alternate access to Town Highway 27 and proposed for development) was instead labeled as Lot 6 on "Sketch Plan B," while the lot labeled as Lot 6 on the 1990 final approval (having no access and not proposed for development) was instead labeled as Lot 7 on "Sketch Plan B." To avoid confusion, this decision will use only the lot numbering system as shown on the 1990 final approval and as referred to in the May 1,

of 1990.

[3] The Planning Commission's written decision refers to the applicant's "Sketch Plan B" as having been "labeled as such at the" September 27, 1989 meeting. Neither the minutes of that meeting nor any document marked "Sketch Plan B" has been provided to the Court. A document showing part of the property (but not showing the whole of Lot 7, and with a 1988 date on the magnetic north arrow), has been submitted by Appellant-Applicants as showing this sketch plan. That document (Appellant-Applicants' Attachment 1) appears instead to be a portion of the April 1990 Hannon Survey (Town's Exhibit F). It cannot be "Sketch Plan B" as the lot numbering is that used in the later 1990 final application. (See lot numbering discussion at ¶3 of May 1, 1990 Hannon letter (Town's Exhibit C)).

3

1990 Hannon letter. The sketch plan approval specifically noted that "the creation of [Lot 6 - the 6.535-acre back lot] is not approved at this time," and required the applicant to "submit, as part of any application for Final Plat Approval, a proposed open space easement, conservation restriction, or similar instrument which provides that [Lot 6 - the 6.535-acre back lot] shall never be developed."

The Hannons' application for final plat approval for the proposed PRD was filed on April 4, 1990 and included the April 3, 1990 Schrieb Engineering plan (and two other Schreib Engineering sheets not provided to the Court in connection with the present motions). A public hearing on the application was scheduled for May 16, 1990. On May 1, 1990, Mr. Hannon supplemented the application with a letter in response to and keyed to the "conditions" or requirements in the Planning Commission's decision on sketch plan review. With regard to the requirement from the sketch plan approval that "the applicant shall submit, as part of any application for Final Plat Approval, a proposed open space easement, conservation restriction, or similar instrument which provides that [Lot 6 - the 6.535-acre back lot] shall never be developed," Mr. Hannon first clarified the lot-labeling confusion, and then proposed to comply with §780(c)(3) and (5) of the 1981 By-Laws governing PRDs instead by deeding Lot 6 back to the developers William and Thomas Hannon, with a condition that:

> Said Grantees [Hannons] and their Heirs and Assigns waive development rights to construct or erect any temporary or permanent structure or building on the parcel of land conveyed herein until future amendment of the zoning district density may provide for additional development of the tract in accordance with Section 780(c)(5) of the [Zoning and Subdivision By-Laws].

This language is derived from the text of §780(c)(5) in the 1981 Bylaws. He also proposed that the deed would include any restrictive clauses required by state regulations.

At the May 16, 1990 hearing, only three Commission members were present, so that the Planning Commission lacked a quorum to vote on the application. As reflected in the minutes of the hearing, the Planning Commission chair stated that the application would

4

be approved by default as there would not be a quorum of Commission members able to render a decision within the required time frame, and that what would be approved was what the Hannons had applied for, as reflected on three site plan sheets from Schreib Engineering, supplemented by the written proposals contained in the May 1, 1990 letter.

Thus, as of the May 16, 1990 default approval of the PRD, the requirement from the 1989 sketch plan approval providing that Lot 6 (the 6.535-acre back lot) "shall never be developed" had been modified to provide that its development would be waived "until future amendment of the zoning district density may provide for additional development of the tract in accordance with" then-applicable PRD requirements. No appeal was taken of this decision, so that it became final, and cannot be challenged, directly or indirectly. 24 V.S.A. §4472(d).

The Town has submitted as exhibits the following two plans: a "Proposed Subdivision Site Plan" prepared by Schreib Engineering, Inc. dated April 3, 1990, and a survey entitled "Proposed Subdivision" prepared by Hannon Associates and dated November 1, 1990. Both are marked as having been approved by the Planning Commission on November 14, 1990 (but see footnote 2, above); both show all seven lots as part of the subdivision. Section 780 provides for approval of modification of the Bylaws for a PRD "simultaneously with the final approval of a subdivision plat."

In 1993, the Hannons conveyed Lot 6 to Peter and Patricia Moore by warranty deed, The deed contained an easement to the development roadway across Lot 3, and contained an easement for the use of the development roadway, but provided that the owner of Lot 6 would not have to pay any share in the cost of maintenance of the development roadway until development had taken place on Lot 6. The deed included a "waiver of development rights" requiring future compliance with the state subdivision and sewage disposal regulations before any development and notifying the buyers that the lot might not qualify for state approval. The deed also included the clause proposed by Mr. Hannon's May 1,

5

1990 letter and incorporated by default in the May 1990 approval:

> In order to comply with the zoning and subdivision regulations of the Town
> of Fletcher, the Grantees, their heirs and assigns waive development rights
> to construct or erect any temporary or permanent structure or building on
> the parcel of land conveyed herein until future amendment of the zoning
> district density may provide for additional development of the tract in
> accordance with Section 780 (c)(5) of the Town of Fletcher, Vermont Zoning
> and Subdivision Bylaws adopted 3 March 1981.

In 1995, Peter and Patricia Moore applied to amend the previously-approved PRD
to allow them to subdivide a one-acre lot from Lot 6 and to dedicate the remainder as open
space[4]. The Planning Commission first granted sketch plan approval of this proposal, but
later reconsidered and denied[5] it on July 6, 1995. No appeal was taken of this decision, so
that it became final, and cannot be challenged, directly or indirectly. 24 V.S.A. §4472(d).

An amended Zoning Bylaw was adopted on October 25, 2002. It retained the two-
acre minimum lot size, but added two-family dwellings to the list of permitted uses. It
amended the provision for PRDs that the "number of dwelling units shall not exceed the
number which could be permitted if the land were subdivided into lots in conformance
with the applicable district requirements" by adding the modifier "for single-family

---

[4]  Neither party has provided this application; the Court cannot determine the
location of the proposed building lot as compared with the remaining open space lot.

[5]  In its 1995 decision, the Planning Commission described the original 1990 PRD as
having been a six-lot PRD on a 12.12-acre parcel, including the five smaller building lots
and Lot 6, but not including Lot 7. The 2006 decision of the DRB on appeal in the present
case repeats this description. However, based on the 1989 and 1990 materials provided to
the Court, this description does not appear to be correct, as Lot 7 includes the development
roadway for which all the lot owners in the PRD have maintenance responsibility. It
appears instead that what was approved in 1990 was a seven-lot subdivision and PRD, in
which Lot 7 (including the development roadway) may have been retained by the
developers and in which Lot 6 was also retained by or deeded back to the developers with
certain development restrictions. However, without the November 14, 1990 Planning
Commission minutes or decision, these facts cannot be established as undisputed.

dwellings." §5.5(B)(2). It specified that , in approving a PRD, the DRB may allow for a greater concentration or intensity of residential development within some sections of a PRD, that is, on lots smaller than the lot size otherwise allowed in the district, provided that it is offset by an area of lesser concentration, including an "appropriate reservation" of open space on the remaining land.

Appellant-Applicants Steven and Courtney Boutin own Lot 5, developed with a single-family house. They acquired Lot 6 from the Moores on August 17, 2005, by warranty deed containing the same "waiver of development rights" language as in the Hannon-to-Moore deed. In early 2006 they applied to amend the 1990 PRD, seeking to build a house on Lot 6. Their application has not been provided, so that material facts are in dispute, or at least have not been provided, as to how similar their application is to that submitted by the Moores, that is, whether they are applying to subdivide Lot 6 to create an additional building lot plus a smaller dedicated open space lot, or whether they are simply applying to build a house on Lot 6 as a whole. The DRB's denial of their application is the subject of their present appeal.

Appellant-Applicants argue that the 2002 Bylaws now provide for a doubled density of dwelling units (a duplex on each two-acre lot rather than a single-family home on each two-acre lot), and argue that for that reason the restriction on Lot 6 has expired by its terms.

However, the restriction on Lot 6 must be analyzed, by its own terms, according to the requirements for PRDs. Although duplexes are now allowed in the district, the allowable density for <u>PRDs</u> in the district has not changed, because the 2002 Bylaws now provide that PRDs must be analyzed according to the number allowable "if the parcel were subdivided into <u>buildable</u> lots in conformance with the district minimum lot area requirement <u>for</u> <u>single-family</u> <u>dwellings</u>" (emphasis added). 2002 Bylaws, §5.5(B)(2). Moreover, the definition of "dwelling unit" in Article VII provides that each dwelling unit

7

is counted separately for the purposes of calculating density.  Therefore, the number of dwelling units allowed[6] for this PRD has not increased[7] under the 2002 Bylaws over that allowed under the 1991 Bylaws, so that the restriction on Lot 6 has not expired by its terms.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant-Applicants' Motion for Partial Summary Judgment is DENIED and the Town's Motion for Summary Judgment is GRANTED as to Question 2 of the Statement of Questions.  A telephone conference is scheduled for March 9, 2007 (see enclosed notice).  Please be prepared to discuss at the conference whether any of the missing information (the November 1990 minutes and decision, the 1995 Moore application, and the 2006 Boutin application) is available and is in fact undisputed, as well as whether Question 1 of the Statement of Questions remains for trial or for further motions.

Done at Berlin, Vermont, this 12th day of February, 2007.

_____
Merideth Wright
Environmental Judge

---

[6]  The Court recognizes that, as of the original 1990 PRD approval, if the PRD involved the full 17.83 acres (including Lot 7), the then-Planning Commission had the discretion to approve up to eight development lots (rather than the six development lots and one open-space lot that it did approve), while if the PRD involved 12.12 acres (exclusive of Lot 7), it had the discretion to approve up to six development lots (rather than the five development lots and one open-space lot that it did approve).

[7]  The 2002 Bylaws have added the requirement that the lots be buildable.  No information has been provided as to the results from the test pits dug on Lot 6.  If some portion of the property as a whole is not "buildable" then the number of lots allowed under the 2002 Bylaws could be less than the number of lots allowed under the 1981 bylaws.

8